**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

AIR EXPRESS INTERNATIONAL, d/b/a
DHL GLOBAL FORWARDING
CORPORATION,

        Plaintiff,

        v.

LOG-NET, INC.,

        Defendant.

Civil Action No. 12-1732 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court upon Plaintiff Air Express International d/b/a DHL Global Forwarding Corporation's ("Plaintiff" or "DHL") motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 122.) Defendant LOG-NET, Inc. ("Defendant" or "LOG-NET") filed opposition (ECF No. 130), and Plaintiff replied (ECF No. 135). The Court has carefully considered the parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Plaintiff's motion for partial summary judgment is denied.

## I.    Background

    This action arises from a commercial dispute between the parties. Defendant is the developer and licenser of computer software. (Def.'s Opp'n 2, ECF No. 130.) Plaintiff is in the business of shipping goods and materials and, for over fifteen years, used Defendant's software to process shipping transactions for its customers. (Pl.'s Moving Br. 1, ECF No. 122-2.)

On February 22, 2008, Plaintiff and Defendant entered into a three-year Master License and Subscription Agreement ("Agreement"), which was amended on February 26, 2011 ("Addendum"). (Def.'s Responses to Pl.'s Statement of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 130-1.[1]) The Agreement enabled Plaintiff to purchase licenses to use Defendant's software in its shipping business. (*Id.* ¶ 3.)

Under the parties' Agreement, Plaintiff utilized Defendant's software through its own computer system, the "Authorized System." (Agreement § 1.3, ECF No. 122-5.) Under the Agreement, "Authorized Users" included both Plaintiff and "DHL Customers" – "DHL's authorized third-party end users of the Authorized System limited to parties using the application in the course of using or providing physical transportation, logistics and distribution services." (*Id.* §§ 1.1, 1.2, 1.5.) Plaintiff's licenses from Defendant included "various components of [Defendant's] software, including (a) Multi-User Server licenses; (b) Client Seat licenses; (c) Documentation Module Multi-User Seat licenses; and (d) Electronic Data Interchange applications." (*Id.* ¶ 9.) Multi-User Servers, the central application servers, contained "the server database and all of the actual Log-Net software." (SUMF ¶ 10.) Client Seats, internet browser connections, are installed on and connect to the Multi-User Servers to access and process

---

[1] Pursuant to Local Civil Rule 56.1, the party filing a motion for summary judgment must file a statement of material facts not in dispute, and an opponent may file a supplemental statement of undisputed material facts to substantiate the factual basis for opposition. In addition, each party must furnish a statement responsive to the other's addressing each paragraph and indicating agreement or disagreement, and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted with the motion. Any material fact not disputed "shall be deemed undisputed" for purposes of deciding the motion. As Defendant did not provide citation to the record regarding certain facts it alleged to be in dispute, the Court will consider paragraphs 11, 12, 13, 17, 30, and 45 of Plaintiff's Statement of Undisputed Material Facts as undisputed for purposes of this summary judgment motion. Additionally, Plaintiff did not submit a responsive statement to Defendant's Statement of Additional Disputed Material Facts, and the Court will consider those facts as undisputed for the purposes of this summary judgment motion.

transactions. (Agreement § 1.18; SUMF ¶ 13.) "To process shipping transactions, DHL was required under the . . . Agreement to have licenses for both the Multi-User Servers and Client Seats." (*Id.* ¶ 14.)

Pursuant to the Agreement, Plaintiff agreed to pay Defendant "one-time license/installation fees, which were calculated based upon the type of license at issue." (*Id.* ¶ 18.) Additionally, Plaintiff agreed to pay Defendant a yearly subscription fee. (*Id.* ¶ 19.) "The payment of the Subscription Fees entitled [Plaintiff] to software upgrades and bug fixes to the software . . . ." (*Id.* ¶ 21.) "Both the license/installation fees and the Subscription Fees were paid on a per server, per Seat or per application basis." (*Id.* ¶ 20.)

The Agreement defines "License(s)" as:

[a]ny personal, non-exclusive, non-transferable, non-assignable license or licenses for Customer's internal use only granted by Licensor to Customer to use the Software or Software Products under this Agreement, such licenses shall be granted on a perpetual basis in consideration of DHL paying a minimum of three years of subscription fees at no less than the licensed volume and costs outlines in Appendix E and C.

(Agreement § 1.9.) Under the heading "License," the Agreement provides that Defendant grants and Plaintiff accepts "a limited, personal, nonexclusive, non-transferable, non-assignable Object Code license to use the Software and Software Products for DHL's Authorized System." (*Id.* § 3.1.) The Agreement further states that "[a]ll Software and Software Products . . . are furnished to [Plaintiff] only under a personal, non-exclusive, non-transferable[,] non-assignable Object Code license solely for DHL Customer's use and DHL's own internal use." (*Id.* § 3.2.)

It is undisputed that Plaintiff "paid Subscription Fees for a minimum of three years for each license of [Defendant's] software that it purchased under the . . . Agreement." (SUMF ¶ 29.) At some point after the three-year period, Plaintiff stopped paying Subscription Fees on some of the licenses, and Plaintiff alleges that Defendant shut down its access to forty-five Client Seats. (Pl.'s

3

Moving Br. 8.)  In response, on March 21, 2012, Plaintiff filed this action asserting two claims against Defendant: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing.  (ECF No. 1.)  In its Amended Answer and Counterclaims, Defendant asserts seventeen counterclaims against Plaintiff, including breach of contract, breach of the implied covenant of good faith and fair dealing, copyright infringement, trademark infringement, and unfair competition. (ECF No. 112.)

On June 6, 2012, Plaintiff moved for a preliminary injunction, and on June 26, 2012, the Honorable Joel A. Pisano, U.S.D.J., after hearing oral argument on Plaintiff's application, granted the injunction.  In support of his findings, Judge Pisano reasoned that "[a]lthough there are arguments that go both ways," "[P]laintiff has demonstrated to [his] satisfaction a likelihood of success on the merits."  (June 26, 2012 Hearing Tr. 44:8-46:16, ECF No. 74.)  Judge Pisano, therefore, entered a preliminary injunction enjoining and restraining Defendant, in part, from denying Plaintiff access to the licenses.  (ECF No. 51.)

By Order dated June 16, 2014, the Court instructed the parties to move for summary judgment on "those claims or defenses as to which the issue of 'perpetual licenses' is dispositive." (ECF No. 118.)  Plaintiff now moves for partial summary judgment as to "(1) the element of breach for its claims of breach of contract and of the implied covenant of good faith and fair dealing, and (2) all or parts of several counterclaims asserted by Defendant."  (Pl.'s Moving Br. 1.)

## II.     Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment

4

as a matter of law." *Id.* An issue is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). The party moving for summary judgment has the initial burden of proving an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

## III.    Analysis

Plaintiff's pending motion for partial summary judgment concerns the construction of the Agreement's "perpetual basis" language contained within the definition of License(s): whether Plaintiff's payment in full of three years of Subscription Fees for all of the licenses under the Agreement gave Plaintiff perpetual rights to the same continued use of those licenses, irrespective of whether Plaintiff continued to pay Subscription Fees, as set forth in section 1.9 of the Agreement. (Pl.'s Moving Br. 15.)

Under New Jersey law, which the parties agree controls the interpretation of the Agreement, the initial question is whether section 1.9 of the Agreement is ambiguous with respect to Plaintiff's perpetual rights. "The appropriateness of granting summary judgment depends upon whether the contract terms at issue in this case are questions of contract construction or contract interpretation." *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F. Supp. 275, 282 (D.N.J. 1992), *aff'd sub nom.*, 993 F.2d 877 (3d Cir. 1993) (citation omitted). "Contracts should be construed according to the plain and ordinary meaning of their terms." *Mollo v. Passaic Valley Sewerage Comm'rs*, No. 07-1655, 2009 WL 5216976, at *16 (D.N.J. Dec. 30, 2009), *aff'd*, 406 F. App'x 664 (3d Cir. 2011) (citing *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004)).

5

"The court's goal is to ascertain the intention of the parties to the contract as revealed by the language used, taken as an entirety, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain." *Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer*, 333 N.J. Super. 310, 325 (App. Div. 2000), *aff'd and remanded*, 169 N.J. 135 (2001) (internal quotation marks omitted). "The document, moreover, must be read as a whole, without artificial emphasis on one section, with a consequent disregard for others." *Id.* "In construing a contract, a court must not focus on an isolated phrase but should read the contract as a whole as well as considering the surrounding circumstances." *Wheatly v. Sook Suh*, 217 N.J. Super. 233, 239 (App. Div. 1987). "If contractual language is 'subject to only one reasonable interpretation,' summary judgment may be appropriate." *Mollo*, 2009 WL 5216976, at *16 (quoting *Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co.*, 180 F.3d 518, 521 (3d Cir. 1999)). "If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." *Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008). "The interpretation of ambiguous terms in a contract is generally a question of fact." *Kaufman*, 828 F. Supp. at 283 (citations omitted).

In the present case, each party asserts that the Agreement is clear and unambiguous but proffers a different interpretation of section 1.9 of the Agreement as it relates to Plaintiff's perpetual rights. Section 1.9 of the Agreement defines License(s) as "[a]ny personal, non-exclusive, non-transferable, non-assignable license or licenses for Customer's internal use only" and provides that "such licenses shall be granted on a perpetual basis in consideration of DHL paying a minimum of three years of subscription fees . . . ." Plaintiff argues that, pursuant to section 1.9, it "secured perpetual rights to use the software licenses by paying three years' worth of annual subscription fees" to Defendant. (Pl.'s Moving Br. 2.) In contrast, Defendant argues

6

that section 1.9 only grants "perpetual licenses" for "DHL's internal use only, [and] not for DHL customer use," and "the perpetuity of these internal-use licenses was conditioned on DHL's continued payment of subscription fees." (Def.'s Opp'n 18.)

In support of its "internal use only" argument, Defendant asserts that, reading the Agreement as a whole, section 3.2 distinguishes between licenses for "DHL Customer's use" and "DHL's own internal use." (*Id.* at 20-21.) Based on this distinction, Defendant argues that "because [s]ection 1.9 affirmatively includes licenses for DHL's 'internal use only,' it necessarily excludes any licenses for 'DHL's Customer's use." (*Id.* at 20.) In response, Plaintiff argues that section 1.9 defines the "licenses" purchased under the Agreement, and the proceeding paragraphs that define DHL Customers and Authorized Users "specifically contemplate[] interactive use of the software by DHL and its customers." (Pl.'s Reply 2.) Plaintiff interprets the "internal use" language in the definition of license to mean that "DHL cannot offer Log-Net software as a stand-alone service or product to its customers." (*Id.*) In further support, Plaintiff argues that, "because the parties agree that the scope of the licenses granted to DHL in [section] 1.9 allows DHL to interact with its customers using the software (and vice versa), the 'perpetual' nature of those same licenses must also permit such interactive and customer use . . . . Otherwise[,] . . . the software licenses would have been meaningless." (*Id.* at 2-3.)

A plain reading of the definition of "License(s)" in the Agreement grants a perpetual license to Plaintiff when certain conditions are met. The phrase "internal use only" contained within that definition, however, is susceptible to two reasonable interpretations. First, when read in conjunction with section 3.2, the phrase suggests that DHL's internal use is something separate from and more limited than "DHL Customer's use." The inclusion of only "internal use" in section 1.9, and not "DHL Customer's use," suggests the parties considered a more limited use of any

7

perpetual license the Plaintiff would be granted under the Agreement.  Second, the phrase, when read in light of the nature of Plaintiff's business and the definition of Authorized Users, could also be interpreted to mean that a perpetual license was granted to the same extent as any other license under the Agreement, which necessarily allowed for the use by DHL's Customers as Authorized Users.  The nature of Plaintiff's business required interactive use of Defendant's software between Plaintiff and Plaintiff's customers.  The Agreement may have necessarily contemplated that interactive use and, as such, included Plaintiff's customers as Authorized Users.  Under this latter interpretation,  the grant of the licenses in section 3.1 and 3.2, "solely for DHL Customer's use and DHL's own internal use," relates back to the definition of "License(s)," and thus, the "License(s)" defined in section 1.9 may be used in the same manner as the license granted in section 3.2.

Defendant's argument, that a condition precedent to any "perpetual license" is the continued payment of subscription fees by Plaintiff, fails.  Defendant directs the Court to numerous provisions of the Agreement in support of its argument; however, none of these provisions plausibly state what Defendant argues.    Additionally, the Agreement clearly states that subscription fees are "limited to software upgrades and fixes to the LOG-NET ® software." (Agreement, Appendix C.b.)  Nothing within the language of the Agreement requires Plaintiff to pay subscription fees to upgrade or fix the LOG-NET software it has already purchased licenses for, and the language in the Agreement is subject to only one reasonable interpretation with regard to payment of Subscription Fees.

Because the scope of the perpetual licenses contained within the definition of "License(s)" cannot be determined solely by relying upon the agreement, which may be plausibly interpreted in different ways, summary judgment in favor of Plaintiff on this issue is precluded.

8

IV.     **Conclusion**

For the reasons set forth above, and for other good cause shown, it is hereby ordered that

Plaintiff's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure is denied.  An order consistent with this opinion will be entered.

**Michael A. Shipp**
**United States District Judge**

**Dated:** January 29, 2015