**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AIR EXPRESS INTERNATIONAL,<br><br>                  Plaintiff,<br><br>       v.<br><br>LOG-NET, INC.,<br><br>                  Defendant. | Civil Action No. 12-1732 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

       This matter comes before the Court on separate motions for partial summary judgment by Plaintiff Air Express International d/b/a DHL Global Forwarding Corporation ("Plaintiff" or "DHL") and Defendant LOG-NET, Inc. ("Defendant" or "LOG-NET") pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF Nos. 158, 159.) Plaintiff moves for partial summary judgment dismissing with prejudice the fifth, sixth[1], seventh, eighth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, and seventeenth[2] counterclaims asserted by Defendant. (ECF No. 158.) Defendant moves for partial summary judgment on its contract counterclaim for forfeiture of Plaintiff's preliminary injunction bond. (ECF No. 159.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule

---

[1] LOG-NET withdraws Counterclaim Six, which asserts a claim for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114. (Def.'s Opp'n Br. 9, n.3, ECF No. 104.) Therefore, Counterclaim Six is dismissed.

[2] LOG-NET withdraws Counterclaim Seventeen which asserts a claim for unjust enrichment. (*Id.* at 26.) Therefore, Counterclaim Seventeen is dismissed.

78.1. For the reasons stated below, Plaintiff's motion for partial summary judgment is granted in part and denied in part, and Defendant's motion for partial summary judgment is denied.

I.  **Background**[3]

This action arises from a commercial dispute between the parties. Defendant is the developer and licensor of computer software. Plaintiff is in the business of shipping goods and materials and, for over fifteen years, used Defendant's software to process shipping transactions for its customers. In 2008, Plaintiff and Defendant entered into a three-year Master License and Subscription Agreement ("Agreement"), which was amended on February 26, 2011 ("Addendum"). The Agreement enabled Plaintiff to purchase licenses to use Defendant's software in its shipping business. Under the parties' Agreement, Plaintiff utilized Defendant's software through its own computer system and had several different types of licenses from Defendant.

Plaintiff stopped paying the fees for some of the licenses under the Agreement and Defendant shut down access to those licenses. In response, on March 21, 2012, Plaintiff filed this action asserting two claims against Defendant: (1) breach of contract; and (2) breach of the implied covenant of good faith and fair dealing. (ECF No. 1.) In its Amended Answer and Counterclaims, Defendant asserts seventeen counterclaims ("Counterclaims") against Plaintiff, including breach of contract, breach of the implied covenant of good faith and fair dealing, copyright infringement, trademark infringement, and unfair competition. (ECF No. 112.) Defendant's Counterclaims are premised on the allegation that Plaintiff was attempting to drive Defendant out of business and also reverse engineer its software.

---

[3] As the parties and the Court are fully familiar with the facts of this case, they will not be recited at length herein. To the extent relevant, disputed facts will be discussed in the analysis section.

Previously, Plaintiff moved for partial summary judgment as to (1) the element of breach for its claims of breach of contract and of the implied covenant of good faith and fair dealing, and (2) all or parts of several counterclaims asserted by Defendant. Plaintiff's motion concerned the construction of the Agreement's "perpetual basis" language contained within the definition of License(s): specifically, whether Plaintiff's payment in full of three years of subscription fees for all of the licenses under the Agreement gave Plaintiff perpetual rights to the same continued use of those licenses, irrespective of whether Plaintiff continued to pay subscription fees, as set forth in the Agreement. In reviewing the Agreement and each party's interpretation, the Court found that "[b]ecause the scope of the perpetual licenses contained within the definition of 'License(s)' cannot be determined solely by relying upon the agreement, which may be plausibly interpreted in different ways, summary judgment in favor of Plaintiff on this issue is precluded." (Op., Jan. 29, 2015, 8, ECF No. 139.)

## II.     Plaintiff's Motion for Partial Summary Judgment

### A.     Legal Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Disputes over irrelevant or unnecessary facts will not preclude a court from granting summary judgment. The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

If the non-moving party bears the burden of proof at trial, the movant may discharge its burden by pointing to an absence of evidence necessary to support the non-movant's claim. *Id.* at 325. Alternatively, a moving party may submit affirmative evidence that negates a material element of the non-moving party's claim. *Id.* at 325-31. If the movant brings such affirmative evidence, or makes a showing that the non-movant lacks evidence essential to its claim, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. The burden of persuasion, however, rests ultimately on the non-moving party to establish each element necessary to succeed on the claims on which it bears the burden of proof at trial. *Id.* at 322.

To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423. However, on a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. Absent a genuine dispute for trial, summary judgment as a matter of law is proper.

**B.      Analysis**

        1.    Counterclaims 5 and 15: Trade Secret and Contributory Infringement

In Counterclaim Five, vicarious and contributory copyright infringement, LOG-NET alleges that DHL is liable for the infringement upon LOG-NET's copyrights by third parties, including GTNexus, pursuant to 17 U.S.C. § 101 et seq., because DHL engaged GTNexus to reverse engineer or copy the software, DHL fraudulently obtained details of LOG-Net's allocation source code, and DHL provided this information to GTNexus. (Answer and Counterclaims ¶¶ 87-93, ECF No. 112.) In Counterclaim Fifteen, misappropriation of trade secrets under N.J.S.A.

56:15-1, et seq.[4], LOG-NET alleges that, pursuant to the Agreement, DHL was provided access to and learned certain confidential information of LOG-NET, and further learned additional trade secrets that it misappropriated by submitting false emergent support requests. (*Id.* ¶¶ 163-74.)

DHL argues that LOG-NET's fifth and fifteenth counterclaims are barred by the economic loss doctrine as they are based on the same set of facts as LOG-NET's contract counterclaim, and thus, should be dismissed with prejudice. (Pl.'s Moving Br. 18-24, ECF No. 158-1.) In opposition, LOG-NET asserts three arguments: (1) "DHL's conduct was extrinsic to the . . . Agreement" and therefore the economic loss doctrine does not apply; (2) "to apply the economic loss doctrine to Log-Net's vicarious and contributory copyright claim would foreclose Log-Net from seeking the special damages specifically allowed by Congress"; and (3) "the parties specifically excluded claims for infringement of intellectual property from the Limitation of Liability provision in the" Agreement. (Def.'s Opp'n Br. 6-8, ECF No. 164.)

"Under New Jersey law, the economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort.'" *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (quoting *Dean v. Barrett Homes, Inc.*, 406 N.J. Super. 453 (2009), *cert. granted*, 200 N.J. 207 (2009)). "In other words, whether a tort claim can be asserted alongside a breach of contract claim depends on

---

[4] The New Jersey Trade Secrets Act ("TSA"), N.J.S.A. 56:15-1, et seq., "'does not apply to misappropriation occurring before the effective date' of the Act, which was January 5, 2012." *Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323, 2013 WL 3772724, at *8 (D.N.J. July 17, 2013) (quoting Trade Secrets Act of 2010, ch. 161, N.J. Laws 780 (2012)). LOG-NET does not assert a counterclaim based on common law misappropriation. Additionally, a party may not amend its pleadings through arguments or facts alleged in opposition to a dispositive motion. *See Bell v. City of Phila.*, 275 F. App'x 157, 160 (3d Cir. 2008) (noting that a plaintiff cannot amend the complaint through briefing). Therefore, the Court finds that LOG-NET has asserted only a claim under the TSA and not common law. However, either would be barred by the economic loss doctrine in this case.

whether the tortious conduct is extrinsic to the contract between the parties." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009) (citing *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, No. 07-321, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008)). "[K]eeping with the purpose of the economic loss doctrine, New Jersey courts have consistently held that contract law is better suited to resolve disputes between parties where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities with equal bargaining power and that could have been the subject of their negotiations." *Travelers Indem. Co.*, 594 F.3d at 248 (citing *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 628 (1997); *Spring Motors Distribs., Inc. v. Ford Motor Co.*, 98 N.J. 555, 566 (1985); *Menorah Chapels at Millburn v. Needle*, 386 N.J. Super. 100, 112 (App. Div. 2006); *Goldson v. Carver Boat Corp.*, 309 N.J. Super. 384, 397 (App. Div. 1998)).

The Court finds that because the allegations giving rise to LOG-NET's misappropriation of trade secrets and contributory copyright infringement claims are not separate and distinct from LOG-NET's breach of contract claim, Counterclaims Five and Fifteen are barred by the economic loss doctrine. In its Answer and Counterclaims, LOG-NET asserts that its breach of contract counterclaim is based off of "DHL's attempts to reverse engineer the LOG-NET® Software" and "DHL's giving third parties access to, and/or unauthorized copies of, LOG-NET® Software without LOG-NET's prior consent." (Answer and Counterclaims ¶¶ 61-62.) This is the same conduct that LOG-NET complains of through its misappropriation of trade secret and contributory copyright infringement claims. (*See* Answer and Counterclaims ¶¶ 88-89, 164-65.) Accordingly, because the underlying conduct of LOG-NET's breach of contract claim is identical to LOG-NET's misappropriation of trade secrets and contributory copyright infringement claims, the Court

finds that DHL's conduct, as alleged in Counterclaims Five and Fifteen, was not extrinsic to the Agreement.

Additionally, the Court does not find any merit in LOG-NET's other arguments. Counterclaim Five is not a statutory claim pursuant to the Copyright Act, but a common law tort claim for contributory copyright infringement. LOG-NET has not explained why its reliance on case law applying the economic loss doctrine to New Jersey Consumer Fraud claims, based on the statute's special damages, should similarly apply to common law copyright claims. In addition, the limitation of liability provision in the Agreement is not relevant to the application of the economic loss doctrine to LOG-NET's tort based claims. Accordingly, the economic loss doctrine bars Counterclaims Five and Fifteen, and they are dismissed with prejudice.

        2.      Counterclaims 7, 8, 12, 13, and 14: Trademark Infringement and Unfair Competition

LOG-NET bases Counterclaims Seven (Trademark Infringement under § 1125), Eight (False Designation of Origin and Unfair Competition under § 1125), Twelve (Unfair Competition under N.J.S.A. 56:4-1), Thirteen (Trademark Infringement under N.J.S.A. 56:3-13.16), and Fourteen (Common Law Trademark Infringement) (collectively, the "Trademark and Unfair Competition Counterclaims") on the same factual premise: "DHL used Log-Net's federally registered LOG-NET® mark in commerce and in violation of the parties' License Agreement, and such use was likely to cause confusion as to the affiliation, connection, or association between DHL and Log-Net." (Def.'s Opp'n Br. 9-10.)

DHL argues that LOG-NET's Trademark and Unfair Competition Counterclaims fail "because those claims are premised on a fundamental misunderstanding of the purpose and function of trademark law." (Pl.'s Moving Br. 24.) Relying on the Third Circuit's decision in *Weil Ceramics and Glass, Inc. v. Dash*, 878 F.2d 659 (3d Cir. 1989), DHL argues that "[t]rademark

7

law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the owner's consent." (*Id.* at 25 (quoting *Weil Ceramics and Glass, Inc.*, 878 F.2d at 671).) As such, DHL argues that LOG-NET has not suffered any infringement of its trademark rights and the limited exception based on confusion does not exist. (*Id.* at 26-27.) Additionally, DHL argues that if the claims are covered under trademark law then DHL's actions are protected as "nominative fair use." (*Id.* at 28-31.) In opposition, LOG-NET argues that "[u]nder well-established Third Circuit law, a licensee's use of a trademark is circumscribed by the terms of the operative licensing agreement" and "[a]s such, a licensee may not use a trademark outside the scope of the licensing agreement." (Def.'s Opp'n Br. 10.)

"To succeed on a trademark claim, a plaintiff must establish that (1) the mark is valid and legally protectable; (2) plaintiff owns the mark and; (3) defendant's use of the mark to identify goods or services is likely to create confusion about the origin of the goods or services." *Microsoft Corp. v. CMOS Techs., Inc.*, 872 F. Supp. 1329, 1335 (D.N.J. 1994) (citing *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)). "In addition, in a case like the one at bar, where defendant['s] previous use of the mark occurred with plaintiff's permission, plaintiff must also establish that a defendant's use of the mark is unauthorized." *Birthright v. Birthright Inc.*, 827 F. Supp. 1114, 1134 (D.N.J. 1993) (citing *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992)).

"The first two requirements, validity and legal protectability, are proven where, as here, a mark was federally registered and has become 'incontestible' under the Lanham Act, 15 U.S.C. §§ 1058 and 1065." *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994). As to the third requirement, "many courts [including the Third Circuit] have held that continued trademark use by one whose trademark license has been canceled satisfies the likelihood

8

of confusion test and constitutes trademark infringement." *ITT Indus., Inc. v. Wastecorp. Inc.*, 87 F. App'x 287, 293 (3d Cir. 2004) (citing *Burger King Corp. v. Mason*, 710 F.2d 1480 (11th Cir. 1983); *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) ("proof of continued, unauthorized use of an original trademark by one whose license to use the mark has been terminated is sufficient to establish 'likelihood of confusion'"); *U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 143 (3d Cir. 1981) ("We perceive that there is great likelihood of confusion when an infringer uses the exact trademark [of its former licensor].")). Moreover, as to LOG-NET's argument that DHL was not authorized to use the mark for certain licenses of the LOG-NET® software, this contention directly relates to the Court's previous decision on Plaintiff's motion for summary judgment. (Op., Jan. 29, 2015, ECF No. 139.) There the Court held that "[b]ecause the scope of the perpetual licenses contained within the definition of 'License(s)' cannot be determined solely by relying upon the agreement, which may be plausibly interpreted in different ways, summary judgment in favor of Plaintiff on this issue is precluded." (*Id.* at 8.) The determination of the scope of the perpetual licenses impacts the analysis of whether DHL's use of the mark was authorized. Thus, summary judgment is precluded on the Trademark and Unfair Competition Counterclaims.

Additionally, DHL argues that its "minimal references to, and display of, the LOG-NET mark – which DHL was required by the License Agreement to feature on its log-in page – do not implicate trademark issues" and are protected by the affirmative defense of nominative fair use. (Pl.'s Reply Br. 5-6, ECF No. 168.) The Third Circuit has adopted a two-step approach in applying the affirmative defense of fair use. "Once plaintiff has met its burden of proving that confusion is likely, the burden then shifts to defendant to show that its nominative use of plaintiff's mark is

9

nonetheless fair." *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 222 (3d Cir. 2005). To demonstrate fair use, the Third Circuit has adopted a three-prong test:

1. Is the use of plaintiff's mark necessary to describe (1) plaintiff's product or service and (2) defendant's product or service?

2. Is only so much of the plaintiff's mark used as is necessary to describe plaintiff's products or services?

3. Does the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services?

*Id.* at 228. As DHL has the burden at trial, it is DHL's burden on its motion for summary judgment to show that there is no genuine dispute as to any material fact relating to the fairness analysis so that it is entitled to judgment as a matter of law on LOG-NET's Trademark and Unfair Competition Counterclaims. As to the third prong—whether DHL's conduct or language reflects the true and accurate relationship between LOG-NET and DHL's products or services—the same factual disputes regarding the interpretation of the Agreement are inherent in this analysis. Whether DHL was authorized under the Agreement to continue the use of certain licenses of the LOG-NET® software directly affects the relationship between the parties. Accordingly, the Court denies DHL's motion for summary judgment with respect to the Trademark and Unfair Competition Counterclaims.

### 3. Counterclaim 11: Tortious Interference with Economic Advantage

In Counterclaim Eleven, LOG-NET alleges that it has developed an economic advantage and "DHL has intentionally made disparaging, misleading and false statements about LOG-NET and the software to customers and prospective customers of LOG-NET, including but not limited to Hasbro and Polo Ralph Lauren." (Answer and Counterclaims ¶¶ 132-33.) DHL moves for summary judgment on this counterclaim, arguing that it is duplicative of LOG-NET's tortious

10

interference with contract counterclaim because it relies on primarily identical factual allegations concerning Avon, whom LOG-NET had a contract with. (Pl.'s Reply Br. 13.)

To prove a claim of tortious interference with prospective economic advantage, the moving party must show: "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739 (1989)). "The second requirement-malice-does not mean ill will but, rather, means that harm was inflicted intentionally and without justification or excuse." *Interstate Realty Co. v. Sears, Roebuck & Co.*, No. 06-5997, 2009 WL 1286209, at *8 (D.N.J. Apr. 27, 2009), *aff'd*, 372 F. App'x 277 (3d Cir. 2010) (internal quotation marks omitted).

Here, to support its counterclaim for tortious interference with prospective economic advantage, LOG-NET asserts that "DHL aggressively interfered with Log-Net's contract with other clients by providing Log-Net's software for free to Avon Products." (Def.'s Opp'n Br. 20.) As LOG-NET concedes that it had a contractual relationship with Avon, facts regarding DHL's interference with LOG-NET and Avon's relationship are more appropriately addressed under Counterclaim Ten for tortious interference with contractual relations. Setting aside the facts that relate to Avon, LOG-NET has not set forth any evidence showing that there is a genuine dispute of material fact as to any of the elements of its tortious interference with prospective economic advantage counterclaim that warrants trial on the issue. Accordingly, DHL's motion for summary judgment is granted with respect to Counterclaim Eleven, and it is dismissed with prejudice.

### III. Defendant's Motion for Partial Summary Judgment

LOG-NET argues that partial summary judgment is appropriate on a portion of its breach of contract counterclaim because, as a DHL employee admitted during his deposition, DHL violated the Agreement by reverse engineering LOG-NET's software. (Def.'s Moving Br. 11-12, ECF No. 159-1.) Additionally, LOG-NET argues that its motion for forfeiture by DHL of its $1,000,000 bond is warranted because judgment on the reverse engineering claim demonstrates that LOG-NET was permitted to terminate the Agreement and was "wrongfully restrained." (*Id.* at 9-10.) In opposition, DHL argues that the Court should deny LOG-NET's motion because "the Third Circuit has explicitly rejected this piecemeal approach to summary judgment practice, by which a party tries to dissect a broader claim into discrete allegations, liability theories[,] or 'pieces' and attempts to style a motion with respect to only one such piece as one for 'partial' summary judgment." (Pl.'s Opp'n Br. 19, ECF No. 163.) Additionally, DHL argues that summary judgment is inappropriate because LOG-NET quotes deposition testimony out of context and there are genuine disputes of material fact as to whether DHL engaged in reverse engineering under the Agreement. (*Id.* at 21-26.)

Pursuant to Rule 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The ability of a court to enter partial summary judgment 'serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine [dispute] of fact.'" *In re G-I Holdings Inc.*, No. 02-3082, 2007 WL 1412294, at *2 (D.N.J. May 14, 2007) (quoting Fed. R. Civ. P. 56, Advisory Committee Notes). "However, a number of courts have concluded that a motion for summary judgment may not properly seek to dispose of only a factual allegation or element of a single indivisible claim for relief." *Collins v. Cottrell Contracting Corp.*,

12

733 F. Supp. 2d 690, 698 (E.D.N.C. 2010) ) ("The court agrees with the holding of these cases as a general matter, although summary judgment may be appropriate as to a part of a claim in rare circumstances not presented here.") (citing *Franklin-Mason v. Penn*, 259 F.R.D. 9, 11 (D.D.C. 2009); *Evergreen Int'l v. Marinex Constr. Co.*, 477 F. Supp. 2d 697, 698 (D.S.C. 2007) (citing cases); *N.J. Auto. Ins. Plan v. Sciarra*, 103 F. Supp. 2d 388, 396 (D.N.J. 1998). "[A] court, in its discretion in shaping the case for tr[ia]l, may deny summary judgment as to portions of the case that are ripe therefor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation." *In re G-I Holdings Inc.*, 2007 WL 1412294, at *3 (quoting *Powell v. Radkins*, 506 F.2d 763, 765 (5th Cir. 1975)).

The Court agrees with DHL, and finds that the issue of "reverse engineering" as it relates to the contract claims in this case is more appropriately left for trial and not decided through a partial summary judgment motion. While this issue could potentially be decided on a motion for summary judgment if the Court solely considered the limited evidence surrounding Mr. Bocchino's actions, the Court finds that the more efficient and better course is to consider the issue of DHL's alleged reverse engineering in conjunction with expert testimony at trial. The Court previously entertained motions for partial summary judgment regarding the parties' contract claims, and again declines to dispose of this counterclaim in a piecemeal fashion. Additionally, at trial, the ultimate finder of fact will be better informed of all the facts relating to DHL's actions in transitioning to the new GTNexus system and whether the actions taken by Mr. Bocchino, or others, constitute reverse engineering under the Agreement. Accordingly, the Court will exercise its inherent discretion and deny LOG-NET's motion for partial summary judgment without prejudice.

13

## IV. <u>Conclusion</u>

For the reasons set forth above, Plaintiff's motion for partial summary judgment is granted in part and denied in part, and Defendant's motion for partial summary judgment is denied. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: September 22, 2016