**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AIR EXPRESS INTERNATIONAL, d/b/a DHL GLOBAL FORWARDING COPORATION, <br><br> Plaintiff, <br><br> v. <br><br> LOG-NET, INC., <br><br> Defendant. | Civil Action No. 12-1732 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on three motions filed by Plaintiff. First, Plaintiff Air Express International, d/b/a DHL Global Forwarding Corporation ("Plaintiff") filed a Motion to Exclude the Expert Testimony of Terrence L. Griswold ("Griswold") and Keith D. Smith ("Smith"). (ECF No. 181.) Defendant Log-Net, Inc. ("Defendant") filed opposition (ECF No. 186), and Plaintiff replied (ECF No. 190). Second, Plaintiff filed a Motion to Exclude the Expert Testimony of John P. Motley ("Motley"). (ECF No. 182.) Defendant filed opposition (ECF No. 187), and Plaintiff replied (ECF No. 191). Finally, Plaintiff filed a Motion to Strike the February 21, 2017 Certification of Motley. (ECF No. 192.) Defendant filed opposition (ECF No. 195), and Plaintiff replied (ECF No. 199). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion to Exclude the Expert Testimony of Griswold and Smith is DENIED; Plaintiff's Motion to Exclude the Expert Testimony of Motley is GRANTED in part and DENIED in part; and Plaintiff's Motion to Strike the Certification of Motley is GRANTED.

I.  **Background**

As the parties and the Court are fully familiar with the facts of this case, they will not be recited at length herein. Relevant facts will be discussed in the Discussion section.

II. **Legal Standard**

Rule 702 of the Federal Rules of Evidence governs the admissibility of testimony by an expert witness. Pursuant to Rule 702, a witness, who qualifies as an expert, may provide testimony if the expert's scientific, technical, or specialized knowledge will assist the trier of fact and "the testimony is based on sufficient facts or data . . . ; [and] is the product of reliable principles and methods . . . ; and the expert has reliably applied the principles and methods to the facts of the case." *Id.* The Third Circuit has found "that Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability[,] and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). The qualification requirement is interpreted broadly and means that the witness possesses a specialized expertise. *Id.* To be reliable, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; [and] the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993)). Finally, the expert's opinion must "fit the issues in the case" and help the trier of fact. *Schneider*, 320 F.3d at 404. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.

"[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability[,] and fit from reaching the jury." *Schneider*, 320 F.3d at 404. The party offering the expert testimony bears the burden of establishing the existence of

each factor by a preponderance of the evidence. *See In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999), *amended by* 199 F.3d 158 (3d Cir. 2000). Rule 702, however, "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citation omitted). "If the expert meets [these] liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Id.* at 809.

### III. Discussion

#### A. Motion to Exclude the Expert Testimony of Griswold and Smith

##### 1. Qualifications

With respect to the issue of qualifications, Plaintiff only objects to Smith's qualifications. (*See* Pl.'s Griswold & Smith Moving Br. 18-19, ECF No. 181-1.) Plaintiff argues that "Smith has never testified at trial or deposition (beyond his deposition in this case), been a sole author of a Rule 26(a)(2)(B) report, or published an article on damages valuation." (*Id.* at 19.) Plaintiff further asserts, "[n]or has . . . Smith undertaken any past analysis concerning damages arising from acts of copyright and trademark infringement and unfair competition. Rather, his experience in assessing damages in the litigation context appears to relate solely to divorce proceedings." (*Id.*)

"[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996); *see Pineda v. Ford Motor Co.*, 520 F.3d 237, 245 (3d Cir. 2008). "While . . . background, education, and training may provide an expert with general knowledge to

3

testify about general matters, more specific knowledge is required to support more specific opinions." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 322 (3d Cir. 2003).

Smith earned a Master of Business Administration ("MBA") in finance, from the University of California, Los Angeles. (Pl.'s Griswold & Smith Mot., Ex. A (the "Griswold & Smith Expert Report"), Addendum 3-2 ("Smith's Resume"), ECF No. 181-3.[1]) Additionally, Smith possesses nearly twenty years of experience in financial consulting and business valuations. (*Id.*) During his experience, Smith "has valued intangible assets including technology, in-process research and development, trademark/tradenames, customer and subscription lists, on-line audiences, covenants not to compete, inventory, workforce, and co-marketing agreements/alliances, as well as hardware and software maintenance contracts." (*Id.*) On the other hand, Smith has never drafted an expert report, other than a report for a divorce matter (*id.*, Ex. C ("Smith Dep.") 10:13-20, ECF No. 181-5), never drafted a damages report by himself (*id.* at 11:8-22), never authored any articles on the evaluation of damages in commercial litigation (*id.* at 11:23-25), and had never been deposed prior to his deposition in the instant matter (*id.* at 12:1-3).

Here, Smith's role in drafting the expert report "was primarily in estimating the economic damages given a certain set of facts that would be associated with software companies and the . . . economic damages associated with those types of businesses." (Smith Dep. 6:17-7:2.) Smith worked with Griswold—whose expertise was in damages calculations—to provide a specific perspective with respect to software companies. (*Id.* at 7:7-16.) Accordingly, the Court finds that Smith is qualified to provide the anticipated expert testimony. Plaintiff, however, may raise relevant objections at trial with respect to Smith's specific testimony at trial.

---

[1] ECF No. 181-3 contains a placeholder for the Griswold & Smith Expert Report, and the actual report is filed at ECF No. 194-1.

2. Reliability

Plaintiff argues that Griswold and Smith's expert testimony would be unreliable because: (1) the Griswold & Smith Expert Report applies a flawed lost profits methodology; and (2) Griswold and Smith failed to conduct an independent analysis. (Pl.'s Griswold & Smith Moving Br. 11-16.) "[A]n expert's testimony is admissible so long as the process or technique [that] the expert used in formulating the opinion is reliable." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742. The purported expert's testimony "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; [and] the expert must have 'good grounds' for his [or] her belief." *Schneider*, 320 F.3d at 404 (citation omitted). "The inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert*, 509 U.S. at 594. In evaluating technical testimony, indicia of reliability can include the expert's identification and discussion of design and performance standards, support in relevant literature, discussion of industry practice, review of previous product design and accident history, use of charts or diagrams to explain conclusions for the trier of fact, and support with scientific testing. *See Milanowicz v. Raymond Corp.*, 148 F. Supp. 2d 525, 532-35 (D.N.J. 2001).

With respect to Plaintiff's argument that the Griswold & Smith Expert Report applies a flawed lost profits methodology, the Court finds the methodology adequately reliable to survive the instant motion. According to Plaintiff, Griswold and Smith assume that the contract at issue between the parties would have continued indefinitely. (Pl.'s Griswold & Smith Moving Br. 11-13.) Defendant, however, explains that its theory of the case, in part, is that Plaintiff "reverse engineered its software so that [Plaintiff] no longer had to continue to purchase [Defendant's] software." (Def.'s Griswold & Smith Opp'n Br. 3, 9, ECF No. 186.) Defendant further argues that "because the software [at issue] is [Defendant's] only product, the value of [its purported]

theft is equivalent to the diminution in the value of [Defendant] itself caused by [Plaintiff] cancelling the contract." (*Id.* at 4.) Plaintiff further argues that Griswold and Smith selected comparable companies that have revenue streams far larger than Defendant's revenue stream. (Pl.'s Griswold & Smith Moving Br. 13-14.) Defendant responds that it relied on publically available metrics for public companies in the same field. (Def.'s Griswold & Smith Opp'n Br. 5-6.) Based on the parties' submissions and review of the Griswold & Smith Expert Report, the Court finds that the methodology, with respect to the lost profits methodology and comparable companies, was adequately reliable and that Plaintiff raises issues that are more appropriate for cross examination at trial.

Plaintiff additionally argues that Griswold and Smith relied primarily on a biased PowerPoint presentation shown by Motley and information obtained from Defendant's website. (Pl.'s Griswold & Smith Moving Br. 15-16.) Plaintiff asserts that Griswold and Smith, therefore, failed to independently: "(1) verify [Defendant's] capabilities or industry position as compared to other companies, (2) investigate or verify alleged lost business from particular 'customers' (most of whom were [Plaintiff's] customers—not [Defendant's], or (3) confirm that there was any causal relationship between [Plaintiff's] acts and [Defendant's losses]." (*Id.* at 15.) Defendant responds that there was no indication that the data Griswold and Smith were provided was inaccurate. (Def.'s Griswold & Smith Opp'n Br. 6-8.) Here, the Court finds that the cases cited by Plaintiff are distinguishable based on the unique facts of the instant case, and, accordingly, determines that Griswold and Smith conducted sufficient analysis and investigation to provide testimony to the jury.

3. <u>Fit</u>

Plaintiff argues that Griswold and Smith's fails to satisfy the fit requirement because: (1) they improperly aggregate all of Defendant's counterclaims to determine an aggregate injury as opposed to accounting for the distinct damages attributable to each of Defendant's counterclaims; and (2) their damages methodology assumes that if Plaintiff "had not allegedly engaged in the complained-of-conduct, the parties would have continued their relationship to the present." (Pl.'s Griswold & Smith Moving Br. 16-18.) An expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. *Schneider*, 320 F.3d at 404. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. The testimony "must in fact assist the [trier of fact], by providing it with relevant information, necessary to a reasoned decision of the case." *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 496 (D.N.J. 2002). The Third Circuit has also instructed that:

> A judge frequently should find an expert's methodology helpful even when the judge thinks that the expert's technique has flaws sufficient to render the conclusions inaccurate. He or she will often still believe that hearing the expert's testimony and assessing its flaws was an important part of assessing what conclusion was correct.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744-45; *see also Heller v. Shaw Indus. Inc.*, 167 F.3d 146, 152-53 (3d Cir. 1999) (finding the trial court should admit expert testimony "if there are 'good grounds' for the expert's conclusion," even if the court believes "there are better grounds for some alternative conclusion"). Upon review of the parties' submissions and the Griswold & Smith Expert Report, the Court finds that Griswold and Smith's analysis satisfies the fit requirement and would be helpful to the jury. For these reasons, Plaintiff's Motion to Exclude the Expert Testimony

7

of Griswold and Smith is denied, and Plaintiff may raise any relevant objections at trial based on the specific testimony presented.

### B. Motion to Exclude the Expert Testimony of Motley

#### 1. Jury Confusion Due to Motley's Dual Role as Expert and Fact Witness

Plaintiff argues that permitting Motley to testify as an expert and as a fact witness would confuse the jury, particularly in light of Motley's interest in the litigation. (Pl.'s Motley Moving Br. 8-9, ECF No. 182-1.) In principle, however, there is nothing objectionable about a witness providing dual testimony as both a fact and expert witness. *See United States v. Lackey*, 164 F. App'x 205, 208 (3d Cir. 2006) (citing *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000)). Here, the Court finds that an appropriate instruction to the jury would avoid confusion or prejudice, and, accordingly, permits Motley to provide testimony as a fact and expert witness.

#### 2. Reliability

First, Plaintiff argues that Motley should not be able to provide expert testimony with respect to legal conclusions, and identifies sections of Motley's Expert Report that purportedly reach legal conclusions. (Pl.'s Motley Moving Br. 9-11.) Defendant agrees with Plaintiff's "general principles of law" and argues that the Court should wait to rule on this issue until trial, where Plaintiff may object based on the context Motley's specific testimony. (Def.'s Motley Opp'n Br. 4-6, ECF No. 187.) The Court notes that the excerpts from Motley's Expert Report identified by Plaintiff appear to reach legal conclusions. It further appears that Defendant does not disagree with respect to these excerpts, and instead appears to assert that Motley's testimony at trial would not contain any legal conclusions. (*Id.*) Accordingly, the Court denies Plaintiff's Motion to Exclude and permits Plaintiff to raise appropriate objections at trial based on the specific testimony provided by Motley.

Next, Plaintiff argues that Motley should be precluded from testifying as to Plaintiff's state of mind. (Pl.'s Motley Moving Br. 11-12.) Defendant argues that it "understands that an unvarnished statement as to state of mind is not a proper opinion," and argues that the issue raised by Plaintiff is more appropriate at trial. (Def.'s Motley Opp'n Br. 6.) The Court agrees that this issue is more appropriate for disposition at trial based on the specific testimony being elicited. Accordingly, Plaintiff's Motion is denied without prejudice with respect to this issue.

3. <u>Fit</u>

Plaintiff argues that Motley's anticipated testimony consists of net opinions "unsupported by facts and devoid of the application of any methodology." (Pl.'s Motley Moving Br. 13.) According to Plaintiff, Motley's Expert Report concludes that Plaintiff "breached the parties' license agreement through various alleged acts of copying and reverse engineering," but "fails to provide any comparisons between the GT Nexus and Log-Net systems, or their respective contents and source code." (*Id.* at 14.) In response, Defendant states that Motley reviewed "[h]undreds of GT Nexus screen shots" to arrive at his conclusions. (Def.'s Motley Opp'n Br. 7.) Accordingly, the Court finds that this issue is most appropriate for disposition at trial and Plaintiff may raise an appropriate objection for lack of foundation or other appropriate grounds based on the specific testimony elicited by Defendant.

4. <u>Admissibility of Opinions on Copyright Infringement</u>

Plaintiff argues that Motley should not be permitted to provide expert testimony on the issue of copyright infringement due to his lack of sufficient qualifications. (Pl.'s Motley Moving Br. 15.) Defendant responds that Motley "is an expert in [Defendant]'s database and database reconstruction," but does not specifically argue that Motley is an expert on issues of copyrights. (Def.'s Motley Opp'n Br. 8-9.) Moreover, Motley admitted in his deposition that he does not

9

consider himself an expert on issues relating to copyright infringement. (Pl.'s Motley Mot., Ex. B ("Motley Dep.") 14:3-7, ECF No. 182-4.) Accordingly, the Court finds that Motley may not provide expert testimony with respect to copyright infringement. Rather, Motley qualifies as an expert in LOG-NET's database and database reconstruction.

    5.    <u>Admissibility of Opinions on Trademarks or Trade Secrets</u>

First, because Defendant concedes that Motley will not offer opinions on trademarks, Plaintiff's Motion is granted as unopposed on the issue of trademarks. (Def.'s Motley Opp'n Br. 11.)

Second, Plaintiff argues that Motley should also be precluded from providing testimony related to trade secrets because Defendant's counterclaim for misappropriation of trade secrets was dismissed on summary judgment. (Pl.'s Motley Moving Br. 17.) In response, Defendant argues that its trade secret counterclaim was dismissed because it was subsumed within its breach of contract claim, and that Motley should be permitted to provide expert testimony "about what [Plaintiff] took, translated, and reverse engineered and how it did it." (Def.'s Motley Opp'n Br. 11.) The Court agrees with Defendant. In its decision on summary judgment, the Court determined that "the allegations giving rise to [Defendant's] misappropriation of trade secrets . . . are not separate and distinct from [Defendant's] breach of contract claim." (Sept. 22, 2016 Mem. Op. 6, ECF No. 171.) The Court, therefore, found that Defendant's counterclaim for misappropriation of trade secrets was barred pursuant to the economic loss doctrine. (*Id.*) Accordingly, the Court permits Motley to provide expert testimony "about what [Plaintiff] took, translated, and reverse engineered and how it did it." (Def.'s Motley Opp'n Br. 11.)

6. Relevance of Miscellaneous Opinions

Plaintiff seeks to exclude miscellaneous testimony as irrelevant. (Pl.'s Motley Moving Br. 17-18.) While the topics identified by Plaintiff appear irrelevant at this time, the Court finds it appropriate to reserve its decision until trial, where Plaintiff may raise appropriate objections based on Motley's specific testimony. For these reasons, Plaintiff's Motion to Exclude the Expert Testimony of Motley is granted in part[2] and denied in part.

C. **Motion to Strike Certification of Motley**

In opposition to Plaintiff's Motion to Exclude Motley's expert testimony, Defendant submitted a certification by Motley ("Motley Certification"). (*See* Def.'s Motley Opp'n Br., Ex. 1, ECF No. 187-1.) Plaintiff argues that the Motley Certification constitutes an improper supplementation of Motley's Expert Report and, therefore, moves to strike the Motley Certification. (Pl.'s Strike Mot. 5, ECF No. 192.)

Federal Rule of Civil Procedure 26(a)(2)(B) requires the disclosure of expert reports that must contain, in part:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them; [and]
>
> (iii) any exhibits that will be used to summarize or support them . . . .

Pursuant to an order issued by the Honorable Tonianne J. Bongiovanni, U.S.M.J., affirmative expert reports were required to be submitted by March 11, 2016; rebuttal expert reports were

---

[2] As set forth above, the Court finds that Motley may not provide expert testimony with respect to trademarks and copyright infringement. Rather, Motley qualifies as an expert with respect to Defendant's database and database reconstruction.

11

required to be submitted by April 12, 2016; expert depositions were to be completed by May 12, 2016; and dispositive motions were to be filed by May 23, 2016. (Feb. 12, 2017 Order, ECF No. 155.) In accordance with the order, and after the exchange of expert discovery, the parties filed dispositive motions on May 23, 2016. (*See* Motions for Summary Judgment, ECF Nos. 158, 159.) The Court subsequently decided the dispositive motions on September 22, 2016. (Sept. 22, 2016 Mem. Op., ECF No. 171.) On January 27, 2017, Plaintiff filed its Motion to Exclude the Expert Testimony of Motley (ECF No. 182), and, on February 21, 2017, Defendant filed opposition, attaching the Motley Certification (ECF Nos. 187, 187-1).

Here, the Motley Certification consists of various bases for Motley's expert opinions—i.e., the type of information that must be included in an expert report as set forth in Federal Rule of Civil Procedure 26(a)(2)(B). Despite Defendant's attempt to characterize the Motley Certification as merely "illuminat[ing] the evidence used in . . . Motley['s] [Expert] Report," (Def.'s Strike Opp'n Br. 2, ECF No. 195), the Court finds that the Motley Certification improperly attempts to expand Motley's Expert Report. Instead of seeking to supplement Motley's Expert Report by following procedures provided under Federal Rule of Civil Procedure 26(e), Defendant improperly attempts to supplement Motley's expert report by a certification attached to an opposition brief. Accordingly, Federal Rule of Civil Procedure 37(c), which governs parties' failure to disclose or supplement disclosures under Rule 26(a), applies to the contents of the Motley Certification: Defendant may not "use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, the Court finds that Defendant's failure to comply with the Federal Rules of Civil Procedure was not substantially justified or harmless given "the advanced stage of the litigation, the extensive expert discovery that had already been completed,

12

and Plaintiff['s] lack of justification." *Steele v. Aramark Corp.*, 535 F. App'x 137, 143 (3d Cir. 2013).

According to the Third Circuit, the Court must consider four factors when considering whether to exclude evidence due to a parties' failure to comply with discovery duties:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000). The Third Circuit has also considered "(5) 'the importance of the excluded testimony' and (6) the party's explanation for failing to disclose." *Dzielak v. Whirlpool Corp.*, No. 12-0089, 2017 WL 1034197, at *30 (D.N.J. Mar. 17, 2017) (quoting *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)).

Here, the Court finds that the applicable factors weigh in favor of striking the Motley Certification. As to the first and third factors, permitting the Motley Certification to supplement Motley's Expert Report would prejudice Plaintiff because it would effectively permit Defendant to circumvent discovery with respect to the contents of the Motley Certification. With respect to the second factor, Defendant argues that any prejudice can be cured by permitting Defendant to supplement Motley's Expert Report, presumably under the procedures set forth under Federal Rule of Civil Procedure 26(e). (Def.'s Strike Opp'n Br. 8.) Defendant, however, has failed to make the appropriate motion or explain why an appropriate motion would likely be granted. Instead, Defendant improperly seeks to supplement Motley's Expert Report by a certification attached to an opposition brief. Absent the appropriate motion, therefore, the Court finds that the second factor does not weigh in Defendant's favor.

With respect to the fourth and sixth factors, although it does not appear that Defendant acted in bad faith, Defendant's lack of a clear justification for its failure to comply with the discovery rules is concerning. Finally, Defendant's own characterization of the Motley Certification as adding nothing new to Motley's Expert Report indicates that the contents of the Certification are not crucial to Defendant's case. (*See* Def.'s Strike Opp'n Br. 2, 6-8, 10.) As the relevant factors weigh in favor of Plaintiff's Motion, Plaintiff's Motion to Strike the Motley Certification is granted.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion to Exclude the Expert Testimony of Griswold and Smith is DENIED; Plaintiff's Motion to Exclude the Expert Testimony of Motley is GRANTED in part and DENIED in part; and Plaintiff's Motion to Strike the Certification of Motley is GRANTED. The Court will issue an order consistent with this Memorandum Opinion.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 31, 2017